AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

District of Nebraska

**SEALED**

United States of America
v.

SCOTT T. TRAN

_Defendant(s)_

)
)
)
)
)
)
)

Case No.   4:15MJ3026

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  between 5/18/2009 and 2/16/2015  in the county of  LANCASTER  in the

District of  NEBRASKA , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC § 1347 | The Defendant, Scott T. Tran, knowingly and willfully executed and attempted to execute a scheme and artifice to defraud and to obtain by means of materially false and fraudulent pretenses and representations, money and property owned by and under the custody and control of the Nebraska Medical Assistance Program, a health care benefit program as defined in Title 18, United STates Code, Section 24(b), in connection with the payment for health care benefits, items and services. |

This criminal complaint is based on these facts:

See Affidavit of Special Agent Michael W. Maseth

☑ Continued on the attached sheet.

_____
_Complainant's signature_

Michael W. Maseth, Special Agent
_Printed name and title_

Sworn to before me and signed in my presence.

Date:  **Mar 31, 2015**

_____
_Judge's signature_

City and state:   Lincoln, Nebraska

Cheryl R. Zwart, U.S. Magistrate Judge
_Printed name and title_

## AFFIDAVIT OF SPECIAL AGENT

I, Michael W. Maseth, being duly sworn, depose and say as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent ("SA") of the Federal Bureau of Investigation ("FBI"), stationed at

Lincoln, Nebraska.  I have been a Special Agent with the FBI since March 1998.  During those

years, I have been assigned to the Chicago Division and to the Omaha Division, Lincoln

Resident Agency.  I have participated in numerous investigations ranging from white collar

investigations, including health care fraud, to violent crime investigations.    The information

contained herein was obtained by the affiant from information obtained by the FBI from

witnesses, independent investigation, and various historical law enforcement reports.  Unless

otherwise noted, wherever in this affidavit I assert a statement was made or a person or event

was observed, the information was provided to me by another law enforcement officer to whom I

have spoken or whose report I have reviewed.  Unless otherwise indicated, such statements are

reported in substance and are not verbatim.

2.      This matter is being investigated as a joint investigation with the Department of Health

and Human Services, Office of Inspector General (HHS-OIG) and the Nebraska Attorney

General's Office, Medicaid Fraud and Patient Abuse Unit (MFPAU).

3.      This affidavit is made in support of a complaint for the arrest of Scott T. Tran (hereinafter

referred to as Tran).  The investigation has uncovered that Tran has committed violations of 18

U.S.C. § 1347 (health care fraud) when Tran submitted and caused to be submitted to the

Nebraska Medical Assistance Program (hereinafter referred to as "Medicaid" or  "Medicaid

Program") claims which Tran knew contained materially false and fraudulent pretenses and

representations, and omissions of material fact, namely that the claims presented to Nebraska

Medicaid sought payment for providing a drug, inhalation solution Tobramycin (Brand Name TOBI), to certain patients when the defendant then well knew TOBI had not been provided to those patients.  During the course of the scheme and artifice these claims totaled approximately $2,476,402.

## Background

### *The Nebraska Medicaid Program*

4.      The Nebraska Medical Assistance Program is a state-administered program aided by federal funds.  Medicaid is designed to provide medical assistance for low income individuals and families.  Covered services include pharmacy services.   Medicaid is a "health care benefit program" as that term is defined in 18 U.S.C. § 24(b).

5.      The Nebraska Department of Health and Human Services Medicaid and Long-Term Care (DHHS MLTC) administers the Medicaid Program.

6.      In the Medicaid Program, a "provider" is defined as any individual or entity furnishing services under a provider agreement with the Medicaid Agency (42 CFR § 400.203).  Every provider that participates in the Medicaid Program must apply for and be assigned a unique number by DHHS.  The Health Insurance Portability and Accountability Act of 1996 (HIPAA) mandated the adoption of a standard unique identifier for health care providers.  This unique identifier is known as a National Provider Identifier (NPI).  These provider numbers can be used to identify claims filed by and monies paid to a certain provider.

7.      For a provider to obtain reimbursement from the Medicaid Program for providing services to a Medicaid recipient, the provider fills out and submits a claim form.  The provider includes on the claim form the provider's name, address and provider number, the recipient's name and Medicaid identification number, the date of service, a brief description of the charges,

the provider's signature, and the date of billing.  The provider then mails or electronically

submits the claim form to DHHS MLTC.  DHHS MLTC relies on the information contained in

the claim form to determine whether the charges for the services are covered by Medicaid and to

determine the amount of reimbursement to which the provider is entitled.  DHHS MLTC then

mails reimbursement checks or transmits payments via electronic funds transfer to the provider.

8.      In administering and paying claims, DHHS MLTC retains and stores Medicaid claims,

payment records, and correspondence to and from providers of medical services who have

participated in the Medicaid Program.  The vast majority of this information is received,

transmitted and stored electronically.

9.      Under the Medicaid Program, each claim that a provider submits is considered a separate

claim under the provider's agreement.  The provider's agreement states that the provider agrees

to keep such records as are necessary to disclose fully the extent of services provided to

Medicaid recipients under the state's Medicaid Program and that the provider agrees to furnish,

upon appropriate request, information regarding any payments claimed for providing services.

The provider further agrees to accept, as payment in full, the amount paid by the Medicaid

Program for those claims submitted for payment under that program, with the exception of

authorized deductibles and co-insurance.

10.     Medicaid assigns recipients or beneficiaries identification numbers.  Each Medicaid

patient (hereinafter referred to as "recipient") is assigned a unique identification number by the

Medicaid Program.  Each recipient can be identified by reference to his or her unique

identification number.

11.     Medicaid requires that pharmacists be licensed by the Nebraska DHHS and approved to

participate in the Medicaid Program by the Nebraska DHHS MLTC.  The pharmacy provider

shall complete and sign Form MC-19, Medical Assistance Provider Agreement and submit it to the Department to be approved for Provider enrollment.

12.     Medicaid requires, as a condition of participation, the provider to: provide patient counseling on all matters which, in the provider's professional judgment, are deemed significant, including: name/description of the medication, route, dosage form, duration of therapy, directions for use, adverse reactions, contraindications, storage/refill information, and maintain adequate patient profiles which may include, name, address, phone number, date of birth, and gender, comprehensive listing of medications and relevant comments.

13.     Medicaid covers outpatient drugs including: legend drugs, compounded prescriptions, and over-the-counter (OTC) drugs indicated as covered on the Nebraska Point of Purchase (NE-POP) System or listed on the Department's web site.  OTC drugs shall be prescribed by a licensed practitioner.

## THE SCHEME

### Scott T. Tran and Pharmacy Specialty Services

14.     Tran is currently a licensed pharmacist in the State of Nebraska and has been licensed since 1994.  According to a Service Provider Agreement filed by Tran with Medicaid, Pharmacy Specialty Services (PSS) is a pharmacy, doing business as Pharmacy Specialty Services and Tran Pharmacy Inc., hereafter collectively referred to as "Tran."  PSS is located at 2655 S. 70th Street Suite C in Lincoln, NE, 68506.   PSS has a NPI of 1144374679, and a Medicaid provider number of 10025533900.

15.     The Nebraska Secretary of State lists Tran as the President, Treasurer, Secretary, and sole Director for PSS, with an effective date on or about April 19, 2007.

16.     According to information provided to Nebraska Medicaid by Tran, PSS is a compounding pharmacy that provides pharmacy services.

**Submission of claims for prescription drugs which were never ordered or dispensed**

17.     Tran has engaged in a scheme to violate 18 U.S.C. § 1347 by submitting false claims to the Nebraska Medical Assistance Program (Nebraska Medicaid) for orders of the prescription drug TOBI.[1]  Claims for Medicaid reimbursement were electronically sent to Nebraska Medicaid for receipt and reimbursement.  After Nebraska Medicaid reviewed the claims, reimbursement was made electronically.

18.     Based upon a review of Medicaid data, Tran submitted 399 claims for reimbursement from TOBI prescriptions allegedly ordered by six physicians in the Lincoln area between May 18, 2009 and February 16, 2015.  The total payments received by Tran for these 399 orders totaled $2,476,402.  Investigation has revealed that the physicians did not prescribe the drug TOBI.[2]

*PHYSICIAN PM*

19.     Physician PM is a medical doctor licensed to practice medicine in the State of Nebraska. According to Medicaid data, Tran has been reimbursed for dispensing prescriptions purportedly ordered by Physician PM for seven patients.  Those patients are minors.  According to a review of Medicaid data, Tran submitted 185 claims to Medicaid beginning on July 30, 2009 through

---

[1]     According to information contained on the Novartis website (www.pharma.us.novartis.com)  TOBI is a tobramycin solution for inhalation.  "TOBI is indicated for the management of cystic fibrosis patients with P.aeruginosa.  Safety and efficacy have not been demonstrated in patients under 6 years... [a patient] should take TOBI in repeated cycles of 28 days on drug followed by 28 days off drug. .. [The patient] should take TOBI twice a day during the 28-day period on drug."  TOBI is administered with a nebulizer, which based upon research, requires that the nebulizer must be disinfected in boiling water for 10 minutes after every other treatment day.

[2]     Interviews of some of the beneficiaries have been conducted and all the interviews conducted revealed that the interviewed beneficiary did not order or receive a prescription for TOBI.

February 16, 2015, for TOBI which were allegedly ordered by Physician PM. These claims submitted to Medicaid resulted in $1,106,094 in payments from Medicaid to Tran.

20.    Law Enforcement agents interviewed Physician PM on or about March 19, 2015. Physician PM indicated that Physician PM has "never prescribed TOBI [in Physician PM's] life."

*PATIENTS WK, VK and AK*

21.    Patients WK, VK and AK are patients of Physician PM, are minors and are siblings. Patients WK, VK and AK are Medicaid recipients.  According to a review of Medicaid data the following are totals for TOBI reimbursements paid to Tran for the alleged dispensing of TOBI to WK, VK and AK:

Patient WK – 21 TOBI reimbursement claims totaling $100,141 in Medicaid payments to Tran beginning on August 10, 2009 through December 7, 2012.

Patient VK – 36 TOBI reimbursement claims totaling $210,700 in Medicaid payments to Tran beginning on July 30, 2009 through August 18, 2014.

Patient AK – 32 TOBI reimbursement claims totaling $209,007 in Medicaid payments to Tran beginning on November 22, 2010 through January 7, 2015.

22.    Patients WK, VK and AK are minors; therefore an interview was conducted with TK who is a parent of WK, VK and AK.  TK stated that WK, VK and AK do not have Cystic Fibrosis or any chronic lung disease.  TK also stated WK, VK, and AK have never been prescribed or received any prescription of TOBI.  TK indicated that prescriptions for WK, VK and AK have never been filled at PSS.  TK stated that she had gone to PSS a number of years ago for a prescription of Progesterone.

23.     A review Medicaid data shows a Tran filed a reimbursement claim for Prometrium[3] under the name of TK's unborn child with a service date of on or about June 15, 2009.  Forty-five days later the first reimbursement claim for TOBI occurred for VK.

*PATIENTS AV and TV*

24.     Patients AV and TV of Physician PM, are minors and are siblings.  Patients AV and TV are Medicaid recipients.  According to a review of Medicaid data the following are totals for TOBI reimbursements paid to Tran for the alleged dispensing of TOBI to AV and TV:

> Patient AV – 27 TOBI reimbursement claims totaling $163,328 in Medicaid payments to Tran beginning on September 23, 2010 through May 5, 2014.

> Patient TV – 27 TOBI reimbursement claims totaling $163,328 in Medicaid payments to Tran beginning on September 23, 2010 through May 5, 2014.

25.     The service dates for the TOBI orders are on the same day for both AV and TV for the time frame listed above.

26.     AMV is a parent of both AV and TV.  AMV stated that neither AV nor TV have Cystic Fibrosis or any chronic lung disease.  AMV has never heard of the prescription drug TOBI, and neither AV nor TV have ever been prescribed or taken TOBI.  One of AMV's children used a nebulizer for a short period when the child was an infant. AMV could not recall if AV or TV was the child that used the nebulizer.

27.     AMV has never filled any of AV or TV's prescriptions at PSS.  AMV recalled getting a prescription for Progesterone at PSS, but AMV believed that she paid for the prescription with a credit card, not her Nebraska Medicaid Card.

---

[3]  Prometrium is a brand name for the generic drug progesterone which is used to treat women because of decreased progesterone in the body.

28.     A review of Medicaid data shows an order for Progesterone, Silica Gel, and Polypeg Suppository Base for AMV on or about September 20, 2013 was submitted by Tran.  Three days later, on or about September 23, 2010, the orders of TOBI for AV and TV began.  AMV recalled that when she presented at PSS she provided the pharmacy with her Nebraska Medicaid card.  At the time, the Nebraska Medicaid card contained AMV's Medicaid number as well as the Medicaid numbers for all of her children including AV and TV.

   *PATIENT BL*

29.     Patient BL is a minor and BL's primary physician is not Physician PM.  BL is a Medicaid recipient.  According to a review of Medicaid data, Tran submitted 12 TOBI reimbursement claims to Medicaid beginning on or about September 17, 2010 through on or about July 9, 2012 for BL.  These claims submitted to Medicaid for Patient BL resulted in $58,032 payments from Medicaid to PSS.  All of the Medicaid claims submitted on behalf of BL were alleged to have been ordered by Physician PM.

30.     A request for records was submitted to Physician PM's practice and the medical practice indicated that BL has not been seen at the Physician PM's practice.

31.     LL is the mother of BL and indicated that in 2010/2011 she saw Physician PM while she was pregnant with her daughter.  Physician PM was not BL's physician.   LL was not aware of using any pharmacies in Lincoln except on an occasion when LL was pregnant with her daughter in 2010/2011.  During that time she used a pharmacy in Lincoln with the word "Specialty" in its title.   LL was prescribed Progesterone and obtained the prescription from the pharmacy in Lincoln with the word "Specialty" in its title.

32.     A review of Medicaid data shows Tran submitted reimbursement for an order of Progesterone, and Silica Gel for LL on or about June 6, 2010.  Orders for TOBI began for LL on or about September 17, 2010. [4]

33.     LL indicated that BL does not have Cystic Fibrosis or any chronic lung disease and has never been prescribed or taken TOBI.  Furthermore, BL has never used a nebulizer, but did see a pulmonologist until BL was approximately five years old.

*PATIENT KA*

34.     Patient KA is a minor and has been in foster care with MA since approximately July 2013.  KA is a Medicaid recipient.  According to a review of Medicaid data, Tran submitted 29 TOBI reimbursement claims to Medicaid beginning on or about July 29, 2011 through on or about February 16, 2015 for KA.[5]  These TOBI reimbursement claims submitted to Medicaid for KA resulted in $196,905 payments from Medicaid to Tran.

35.     During the time period that KA has been in the custody of MA, Tran submitted 15 claims to Medicaid for TOBI prescriptions for KA totaling $114,088 payments to Tran.

36.     KA's biological mother had an order for Progesterone in sesame oil in 2010, and Prometrium on or about July 29, 2011, which is the first day that a claim for TOBI was submitted for KA.

37.     MA was interviewed and indicated that KA does not have Cystic Fibrosis or any chronic lung disease and has never received TOBI since being in MA's care.  Furthermore, KA does not have any prescriptions ordered from a pharmacy in Lincoln, and is not under the care of Physician PM since being under MA's care.

---

[4] BL turned five years old in 2009 and the first order for TOBI occurred in September 2010 when BL turned six. Note that the package insert for TOBI indicates that it is not efficacious for use on children less than six years of age.
[5] KA turned six years old in June 2011, the first order of TOBI for KA occurred on July 29, 2011.  Note that the package insert for TOBI indicates that it is not efficacious for use on children less than six years of age.

38.     A review of medical records for KA reveals that KA was a patient of Physician PM until approximately July 20, 2013.  A review of KA's medical records does not show any reports of Cystic Fibrosis or chronic lung disease.  No prescriptions for TOBI are listed in KA's medical record from Physician PM's office.

*PHYSICIAN TF*

39.     Physician TF is a medical doctor licensed to practice medicine in the State of Nebraska. According to Medicaid data, Tran has been reimbursed for dispensing TOBI prescriptions ordered by Physician TF for one patient.  That patient is a minor and has the initials JT. According to a review of Medicaid data Tran submitted 16 TOBI reimbursement claims to Medicaid beginning on or about June 18, 2010 through on or about December 14, 2012 for JT. These reimbursement claims submitted to Medicaid for JT resulted in $79,294 payments from Medicaid to Tran.

   *PATIENT JT*

40.     Patient JT is a minor and a Medicaid recipient.  JT's mother was interviewed by Law Enforcement and indicated that JT has never had Cystic Fibrosis or chronic lung disease, and has never been prescribed TOBI.  JT's mother stated that she only used PSS for a prescription for ADHD medicine which was prescribed by a specialist, not by JT's regular physician, Physician TF.

41.     A review of Medicaid data shows that JT had received prescriptions for Dexmethylphenidate Hydrochloride (which is used for the treatment of ADHD) on or about March 29, 2010 and on or about April 29, 2010.  The ordering physician was not Physician TF. Claims for reimbursement for TOBI under JT's Medicaid beneficiary number began on or about June 18, 2010.

*PHYSICIAN SB*

42.     Physician SB is a medical doctor licensed to practice medicine in the State of Nebraska. According to Medicaid data, Tran has been reimbursed for TOBI prescriptions ordered by Physician SB for four patients.  Medicaid data shows that from on or about May 18, 2009 through on or about February 16, 2015, Tran submitted reimbursement claims for 106 orders of TOBI which were allegedly prescribed by Physican SB.  These submitted TOBI reimbursement claims resulted in $651,706 payments from Medicaid to Tran.

43.     Physician SB was interviewed regarding Physician SB's prescribing TOBI to minor patients with the initials HK, ALK, JK and OW.   Physician SB has never prescribed these patients TOBI and none of the patients have Cystic Fibrosis or chronic lung disease.

44.     Physician SB also indicated that HK, ALK and JK do not live in Lincoln and have their prescriptions sent to a pharmacy outside of Lincoln.

45.     Physician SB stated that OW has not been a patient of Physician SB since on or about August 2012.  Physician SB has never ordered TOBI for OW and has not ordered any prescriptions for OW since OW switched to another physician.  Medicaid data shows that OW's orders for TOBI begin on or about May 3, 2013 and the ordering physician is Physician SB.[6]

*PHYSICIAN CD*

46.     Physician CD is a medical doctor licensed to practice medicine in the State of Nebraska. According to Medicaid data, Tran has been reimbursed for dispensing TOBI prescriptions ordered by Physician CD for two minor patients, EB and AL.   According to a review of Medicaid data Tran submitted 54 TOBI reimbursement claims to Medicaid beginning on or

---

[6] OW turned six years old in April 2013, the first order of TOBI for OW occurred on May 3, 2013.  Note that the package insert for TOBI indicates that it is not efficacious for use on children less than six years of age.

about May 18, 2011 through on or about February 10, 2015. These TOBI reimbursement claims submitted to Medicaid for CD resulted in $356,645 payments from Medicaid to Tran.

47.    Physician CD was interviewed and stated that Physician CD has never ordered TOBI for any patients. Furthermore, neither EB nor AL is Physician CD's patient.  Physician CD reviewed medical charts and discovered through the review that EB and AL are siblings and that Physician CD is the physician for one of EB and AL's other siblings, AB.

48.    A review of Medicaid data shows that on or about May 12, 2011, Tran filled a prescription of Sodium Chloride for AB.  On or about May 18, 2011, the first reimbursement orders for TOBI were submitted for both EB and AL.[7]

*PHYSICIAN KF*

49.    Physician KF is a medical doctor licensed to practice medicine in the State of Nebraska. According to Medicaid data, Tran has been reimbursed for dispensing prescriptions ordered by Physician KF for one minor patient, JE.   According to a review of Medicaid data, Tran submitted 18 claims to Medicaid beginning on or about March 6, 2013 through on or about January 7, 2015. These claims submitted to Medicaid for JE resulted in $134,788 payments from Medicaid to Tran.

50.    Physician KF was interviewed and indicated that Physician KF has never ordered TOBI for JE and JE does not have Cystic Fibrosis or chronic lung disease and therefore would not need the drug TOBI.

*PHYSICIAN WS*

51.    Physician WS is a medical doctor licensed to practice medicine in the State of Nebraska. According to Medicaid data, Tran has been reimbursed for dispensing prescriptions ordered by Physician WS for one minor patient, BAB.   According to a review of Medicaid data, Tran

---

[7] It should be noted that AB will not be six years old until the fall of 2016.

submitted 20 TOBI reimbursement claims to Medicaid beginning on or about November 2, 2012 through on or about January 7, 2015. These TOBI reimbursement claims submitted to Medicaid for CD resulted in $147,875 payments from Medicaid to Tran.[8]

52.     Physician WS was interviewed and indicated that Physician WS has never ordered TOBI for BAB and BAB does not have Cystic Fibrosis or chronic lung disease and therefore would not need the drug TOBI.

## SUMMARY

A review of Medicaid data pertaining to the physicians and patients identified above revealed payments to Tran for fraudulent Medicaid submissions for disbursing TOBI during the time period from on or about May 18, 2009 through on or about February 16, 2015, as follows:

Physician PM – 185 claims totaling $1,106,094

Physician TF – 16 claims totaling $79,294

Physician SB – 106 claims totaling $651,706

Physician CD – 54 claims totaling $356,645

Physician KF – 18 claims totaling $134,788

Physician WS – 20 Claims totaling $147,875

For these physicians, during this time period, there were 399 TOBI claims resulting in a total of $2,476,402 in payments to Tran.

It should be noted the investigation in this case is ongoing, and this Affidavit does not attempt to describe all suspected false claims by Tran for TOBI.

Michael W. Maseth
Special Agent, FBI

---

[8] It should be noted that BAB's first TOBI prescription occurred during the month when BAB turned six years old.

Sworn to before me and signed in my presence.

Date:   **Mar 31, 2015**

Cheryl R. Zwart
United States Magistrate Judge